### 43568. TUCKER v. KEMP.
(351 SE2d 196)

MARSHALL, Chief Justice.

We granted the appellant's application for certificate of probable

---

cause to appeal the superior court's dismissal of his petition for a writ of habeas corpus under OCGA § 9-14-51 on the ground that the claim sought to be litigated could reasonably have been raised in a prior habeas corpus proceeding. For reasons which follow, we affirm.

In March of 1978, the appellant was convicted of murder, robbery by intimidation, and kidnapping with bodily injury. The evidence showed that, on the day of the crimes, he had been drinking heavily and smoking marijuana. He went to a Majik Market, which he robbed. The store's operator was Kathleen Perry, whom he kidnapped. He took her from the store and killed her by stabbing her four times. He was observed by several witnesses leaving the murder scene. He made an incriminating statement to police admitting the robbery by intimidation and kidnapping, but, according to his testimony at trial, he could not remember a knife or the murder. A death sentence was imposed for the murder conviction. On direct appeal, all convictions and sentences were affirmed. *Tucker v. State*, 244 Ga. 721 (261 SE2d 635) (1979).

In 1980, the appellant filed a petition for a writ of habeas corpus in the Butts Superior Court. This petition was denied by the superior court. The application for certificate of probable cause to appeal was denied by this court in 1981. The United States Supreme Court denied certiorari. *Tucker v. Zant*, 454 U. S. 1022 (102 SC 555, 70 LE2d 417) (1982).

In 1982, the appellant filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia. During the pendency of protracted proceedings in the federal district court and the Eleventh Circuit Court of Appeals, the appellant, on May 29, 1985, filed the present petition for a writ of habeas corpus in the Butts Superior Court. In this petition, the appellant presents for the first time a claim that at the guilt/innocence phase of his trial, the jury instructions on intent were unconstitutionally burden-shifting as being in violation of the Due Process Clause of the Fourteenth Amendment. The appellant argues that in a line of cases commencing with *Skrine v. State*, 244 Ga. 520 (260 SE2d 900) (1979), the jury instructions under attack here had been repeatedly upheld by this court; however, the Supreme Court of the United States, on April 25, 1985, in *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985), held that jury instructions virtually identical to those given here are unconstitutionally burden-shifting. The superior court dismissed the appellant's habeas corpus petition as being successive. *Held*:

Georgia's habeas corpus statute, OCGA § 9-14-51, provides: "All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the

United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

"Thus, in considering a successive petition, the habeas court must determine, as the threshold matter, whether the petitioner is entitled to a hearing on the merits of his belated claims. See *Smith v. Garner*, 236 Ga. 81, 85 (222 SE2d 351) (1976). In order to be so entitled, the petitioner must raise grounds which are either constitutionally nonwaivable or which could not reasonably have been raised in the earlier petition. *Fuller v. Ricketts*, 234 Ga. 104 (214 SE2d 541) (1975); *Dix v. Zant*, 249 Ga. 810, 811 (294 SE2d 527) (1982). For example, in *Smith v. Garner*, supra, where the successive petitioner's first habeas attorney would not raise several constitutional issues despite the petitioner's requests to do so, the petitioner was allowed to proceed on the merits of his second petition. But, in *Samuels v. Hopper*, 234 Ga. 246 (215 SE2d 250) (1975), where ineffective assistance of trial counsel had been raised in petitioner's first habeas, his claim in the successive petition that the failure of his appointed trial counsel to inform him of his right to appeal was dismissed. Accord, *Yates v. Brown*, 235 Ga. 391 (3) (219 SE2d 729) (1975); *Fuller v. Ricketts*, supra." *Smith v. Zant*, 250 Ga. 645, 647 (2) (301 SE2d 32) (1983).

As we alluded to in *Stevens v. Kemp*, 254 Ga. 228 (1) (327 SE2d 185) (1985), footnote 1 of *Hammock v. Zant*, 243 Ga. 259, 260 (253 SE2d 727) (1979), states that "[t]here is an exception to the res judicata rule in that habeas would likely be allowed if the law changed which might render a later challenge successful. *Bunn v. Burden*, [237 Ga. 439 (228 SE2d 830) (1976)]." However, the change in the law which transpired in *Bunn v. Burden*, supra, was that the statute under which the habeas petitioner had been convicted was subsequently held to be unconstitutional by this court. In *Jarrell v. Zant*, 248 Ga. 492 (n. 1) (284 SE2d 17) (1981), we allowed another habeas petitioner under a death sentence to raise in a successive habeas corpus petition the claim that the trial court's instructions to the jury at the sentencing phase of the trial violated *Spivey v. State*, 241 Ga. 477 (246 SE2d 288) (1978), and its predecessors, *Hawes v. State*, 240 Ga. 327 (240 SE2d 833) (1977), and *Fleming v. State*, 240 Ga. 142 (240 SE2d 37) (1977), in that these cases were not decided until after the hearing of that petitioner's first habeas action.

However, this holding in *Jarrell v. Zant*, supra, is equally supportable under the rationale of *Stynchcombe v. Floyd*, 252 Ga. 113 (311 SE2d 828) (1984). " '(I)n a death case the sentencing charge is so crucial to the outcome of the trial that we will exercise our power to review those charges when the issue is placed before us on habeas, whether objection was made in the trial court or not.' *Stephens v.*

*Hopper,* [241 Ga. 596, 602 (247 SE2d 92) (1978)]. Failure to object to a sentencing phase jury charge in a death penalty case where the jury was not informed that a life sentence could be recommended in spite of the presence of aggravating circumstances does not preclude review of that charge on habeas corpus." 252 Ga. at p. 115. However, this ruling in *Stynchcombe* does not apply to the jury instructions in the guilt/innocence phase of a death penalty trial. See *Rivers v. State,* 250 Ga. 303 (7) (298 SE2d 1) (1982). In *Rivers,* we held that the defendant who had been given the death sentence there was precluded from raising a claim of an unconstitutionally burden-shifting jury instruction given during the guilt/innocence phase of his trial, because the trial court asked defense counsel if there were any objections to the jury charge and defense counsel did not raise this objection. Accord *Zant v. Akins,* 250 Ga. 5 (2) (295 SE2d 313) (1982).

The appellant contends that his successive claim of an unconstitutionally burden-shifting jury instruction could not reasonably have been raised in his original petition. We must disagree. The appellant's contention in this regard is belied by the fact that the habeas petitioner in *Francis v. Franklin,* supra, was in fact a Georgia prisoner whose murder conviction was affirmed by this court on January 4, 1980. *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980). In *Franklin v. State,* supra, Franklin argued that the trial court's jury instructions on the mandatory rebuttable presumption of intent were unconstitutionally burden-shifting, and this argument was rejected. 245 Ga. at pp. 152-154 (8). This demonstrates that this claim could reasonably have been raised in the state habeas petition which the appellant filed in 1980.

Contrary to the appellant's argument that the Supreme Court's decision in *Francis v. Franklin,* supra, constituted some sort of change in the law, the five-Justice majority in *Franklin* held to the contrary. 105 SC at p. 1973, n. 5.[1]

---

[1] In footnote 5 of *Franklin,* the majority of the Court posited the following:

"The dissent's suggestion that our holding with respect to the constitutionality of mandatory rebuttable presumptions 'extends' prior law, *post,* at 1978 (REHNQUIST, J., dissenting), is simply inaccurate. In *Sandstrom v. Montana* our holding rested on equally valid alternative rationales: 'the question before this Court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind. We conclude that *under either of the two possible interpretations of the instruction set out above,* precisely that effect would result, and that the instruction therefore represents constitutional error.' 442 U. S., at 521, 99 S.Ct., at 2458 (emphasis added). In any event, the principle that mandatory rebuttable presumptions violate due process had been definitively established prior to *Sandstrom.* In *Mullaney v. Wilbur,* it was a mandatory *rebuttable* presumption that we held unconstitutional. 421 U. S., at 698-701, 95 S.Ct., at 1889-1890. As we explained in *Patterson v. New York*:

'*Mullaney* surely held that a State . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense . . . Such shifting of the burden of persuasion with respect to a fact which the State deems so impor-

Furthermore, there was overwhelming evidence at the appellant's trial that he robbed the victim, kidnapped her, and murdered her by stabbing her four times. As stated earlier, the evidence further showed that the appellant had been drinking heavily and smoking marijuana on the day he committed the crimes. He admitted committing the robbery and kidnapping, but his defense was simply that he could not remember a knife or murder. In mitigation, he urged the fact that he was under severe emotional stress as a result of the recent death of his father, as well as the fact that he was under the influence of alcohol and marijuana at the time he committed the crimes. However, voluntary intoxication is, of course, not an excuse for any criminal act. OCGA § 16-3-4 (c); *Estes v. State*, 55 Ga. 30 (1875). Consequently, it would appear as though " 'the evidence was so dispositive of intent that a reviewing court [could] say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.' " *Rose v. Clark*, __ U. S. __ (106 SC 3101, __ LE2d __) (1986) (Slip. Op. p. 13).

We will not attempt, herein, to enunciate any set of rules for determining whether a given claim could or could not reasonably have been raised in an original habeas proceeding. We hold only that, for the reasons given, the claim sought to be asserted here could reasonably have been raised.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1987.

*Kocher, Wilson, Korschun & Cobb, Eric G. Kocher, Robert B. Remar,* for appellant.

*Michael J. Bowers, Attorney General, William B. Hill, Jr., Senior Assistant Attorney General,* for appellee.

---

tant that it must be either proved or presumed is impermissible under the Due Process Clause.' 432 U. S., at 215, 97 S.Ct., at 2329. An *irrebuttable* presumption, of course, does not shift any burden to the defendant; it eliminates an element from the case if the State proves the requisite predicate facts. Thus the Court in *Patterson* could only have been referring to a mandatory *rebuttable* presumption when it stated that 'such *shifting* of the burden of persuasion . . . is impermissible.' *Ibid.* (emphasis added)." (Emphases in original.)